(32 App. Div. 364.)

### BARKER et al. v. MILLER.

(Supreme Court, Appellate Division, Second Department. July 23, 1898.)

1. REDEMPTION FROM TAX SALE.
   Under sections 5 and 6 of the charter of the city of Brooklyn (Laws 1888, c. 583), as amended by Laws 1889, c. 368, a purchaser of mortgaged property at a tax sale might, by procuring an assignment of the mortgage to himself, and in the absence of conspiracy or bad faith, become authorized, in his capacity as mortgagee, to redeem the property from his own purchase.

2. RES JUDICATA.
   If, in a subsequent action to foreclose the mortgage, the assignee also demands and recovers, though by default, the amount paid by him on redemption, the judgment is, to that extent, a bar to an action by the mortgagor to have the redemption declared fraudulent or void.

Appeal from special term.

Action by Maude E. Barker and Charles S. Barker against Frederick W. Miller. From a judgment dismissing the complaint on the merits and for costs, plaintiffs appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

James C. Bergen, for appellants.

Nathaniel H. Clement, for respondent.

GOODRICH, P. J.    The action is brought to declare fraudulent or void a redemption from a tax sale of certain premises in Classon avenue, Brooklyn.    The property at the time of the tax sale was owned by Maude E. Barker, and the premises were sold by the registrar of arrears on March 4, 1896, to the defendant, Frederick W. Miller, for the sum of $2,400.    The premises were originally owned by Charles S. Barker.    On February 18, 1878, he executed a mortgage thereon for $1,500, to Margaret Elliott, who died in November, 1882, leaving a will bequeathing the mortgage to her daughter, Mary E. Ward.    The mortgaged premises were conveyed by Charles S. Barker and Freelove D. Barker, his wife, to one Alida D. Rogers, by deed recorded on February 19, 1880, and the latter conveyed them by deed recorded April 8, 1880, to Freelove D. Barker.    The latter died intestate in January, 1882, leaving, her surviving, her husband, Charles S. Barker, and her only child and heir at law, Maude E. Barker.    At the time of the tax sale the mortgage on the property, made by Barker to Margaret Elliott, was held by Mary E. Ward.    On March 4, 1897, one year after the tax sale, she duly assigned the bond and mortgage to the defendant, in consideration of the principal and interest; whereupon, and on the same day, the defendant, claiming the right of redemption as assignee of the mortgage, paid to the registrar of arrears—

| | | |
|---|---:|---:|
| The 10 per centum of the purchase price, not exceeding $100, the sum of | $ 100 | 00 |
| Also 15 per centum of the purchase price | 375 | 00 |
| Also amount of unpaid taxes | 81 | 95 |
| Total | $ 556 | 95 |
| Original purchase price | 2,400 | 00 |
| | $2,956 | 95 |
| Deducting amount of city taxes | 81 | 95 |
| Leaving | $2,875 | 00 |

This sum was paid by the city to the defendant.

By chapter 583, Laws 1888 (Charter of City of Brooklyn), as amended by chapter 368 of the Laws of 1889, it is provided (section 5) as follows:

"Any person or persons having an estate in or any mortgagee of any of the lands and premises sold in pursuance of the third section of this title, whose estate or lien appears of record in the county of Kings, may at any time before the expiration of one year after notice shall have been given to him of such sale, by the purchaser or his assigns in the manner hereinafter provided, or before a deed of said premises shall have been delivered as provided in section four of this title, redeem said lands and premises by paying to the registrar of arrears for the use of the purchaser or his assigns the sum paid by him on such sale, and ten per centum on the same, but such percentage shall not exceed the sum of one hundred dollars on any one parcel of land sold.   And on such redemption there shall be paid on the aggregate amount made up of the sum paid by the purchaser at the sale and the said percentage, interest from the date of said sale at the rate of fifteen per centum per annum, and one dollar for each notice (not exceeding six) served as

hereinafter provided, together with all such sums which shall have been paid by such purchaser or his assigns for taxes, assessments or water rates on said lands levied, imposed or becoming due after the tax, assessment or water rate for which the sale was made, with interest thereon from the date of such payments, respectively, at the rate of nine per centum per annum (which said payments said purchaser or his assigns is hereby authorized to make)."

Section 6 provides that moneys received from purchasers at the tax sale shall be deposited with the city treasurer, and that the surplus, if any, remaining—

"After deducting the amount of the tax, assessment and lien and interest and expenses of sale, * * * shall be held for the use of, and paid over to, the person legally entitled, upon his establishing his rights thereto. * * * Any person redeeming any lands from a sale under the provisions of this title, shall, at the request of the person so redeeming, be allowed and credited by the registrar of arrears, toward such redemption, with the amount of surplus moneys received on such sale then remaining in the hands of the treasurer, and upon his presenting to the said registrar a certificate from the comptroller showing the amount of such surplus, such amount shall be applied upon or toward such redemption."

This action proceeds on the theory that the defendant, being such purchaser, procured the assignment to himself of a mortgage which existed on the premises, in fraud of the plaintiffs' rights, and for the purpose of using it to redeem the property, thus preventing the plaintiffs, as owners of the property, from making the redemption; that the defendant, by the purchase at the tax sale, became the owner of the premises; and that the plaintiffs "became entitled to have all the liens and charges upon said premises paid off and discharged out of the purchase price and the surplus paid to her."

Considerable testimony was taken to show that after the tax sale the plaintiff Maude E. Barker had made an agreement with Mrs. Ward, who held the mortgage on the premises, that the title to the premises should be conveyed to the latter, and that she should redeem them, and receive the amount ($2,400) for which they had been sold, less the taxes and expenses, take out of the balance the amount of her mortgage and interest, and pay over the surplus of about $800 to the plaintiff; that a deed was executed by the plaintiff in pursuance of such agreement, and handed to Mr. Whitney, as attorney for Mrs. Ward, but that the defendant wrongfully persuaded the latter not to carry out such agreement; that the deed was destroyed, and the defendant fraudulently procured an assignment of the mortgage to be made to him by Mrs. Ward. The defendant denied the agreement and all fraud in any respect. As the judgment is ordered in favor of the defendant "on the merits," after contradictory evidence, we must hold all these controverted questions of fact to have been established in favor of the defendant, and determine the rights of the parties on that theory.

The plaintiffs further contend that:

"The purchaser at the tax sale had no right to redeem the property from his own purchase. The purchaser at the tax sale had no right to relieve himself from the payment of the full amount of his bid to the detriment of the owner of the fee. The purchaser at the tax sale, by subsequently purchasing the mortgage and then undertaking to redeem from his own purchase in his subsequently acquired character of mortgagee, is acting in defraud of the provisions of statute."

A purchaser at a tax sale acquires no title to the fee at the time of his bid, nor by virtue of the certificate given him by the city. He obtains merely an inchoate right. The certificate, which is called a "certificate of sale," contains a covenant on the part of the city to refund the amount of the purchase price in case the title proves invalid by reason of anything happening prior to the sale; that, if within one year after the date of the sale the purchaser shall have caused notice of such sale to be served on the persons entitled to redeem the lands,—that is, the prior owners and mortgagees,—the registrar of arrears will, on the presentation of the certificate and proof of the service of such notice, execute and deliver to such purchaser a deed for said premises, whereby "such purchaser, his legal representatives or assigns, shall take a good and sufficient title in fee simple absolute to the property, of which the said deed shall be presumptive evidence." It is also provided that the certificate of sale, from the time of such sale and record thereof, shall be a lien upon the premises sold, but such lien shall terminate at the expiration of 10 years from the sale, unless it has been followed by the delivery of the deed. Until the deed is actually given, the purchaser's interest is inchoate, and ripens into title only when the deed is executed and delivered. It was held in People v. Palmer, 10 App. Div. 395, 397, 41 N. Y. Supp. 760, 762, that "the right to redeem is limited to persons having an estate in, or mortgage upon, the lands whose estate or lien appears of record in the county of Kings." In Sidenberg v. Ely, 90 N. Y. 257, the court held that a mortgagee had the right to redeem premises sold for taxes, and add the amount thus paid to the amount due for principal and interest, even where the mortgage contained no tax clause authorizing such payment; and cited, in support of the proposition, Will. Eq. Jur. p. 446; Thomas, Mortg. pp. 86, 276; Jones, Mortg. §§ 77, 1134.

The defendant, Miller, by the assignment of Mrs. Ward's mortgage, became subrogated to all her rights. She had the undoubted right of redemption, and the defendant, succeeding to her rights, was authorized to redeem from the tax sale, unless it can be held that the use in section 5 of the words which require the payment of the bid to the registrar of arrears, "for the use of purchaser or his assigns," can be held to exclude this idea. It may be conceded that Maude E. Barker, the owner of the property, had the option of redeeming it or of accepting and treating the sale as valid. She might at any time, and on notice to persons having a mortgage lien thereon, have redeemed the premises in the manner prescribed by the statute, or she could have elected to receive the amount of the bid, less the mortgage and other liens (People v. Palmer, supra); but a mortgagee also has the same right of redemption. Priority of right is given to neither of such persons. Necessarily there can be but one redemption, and either the owner or the mortgagee can exercise that right, irrespective of the other. Whichever first exercises the right obtains whatever advantages arise therefrom. "Qui prior est tempore potior est jure." When Miller, as assignee of the Ward mortgage, exercised his right of redemption, the matter was complete, and the former owner was excluded from exercising her right to redeem.

In Sidenberg v. Ely, supra, the court (pages 263, 264) used language which is singularly apposite to the contention of the plaintiffs herein, as follows:

"The doctrine that neither the plaintiff nor his assignor could have any benefit from the doctrine of subrogation, because they voluntarily paid the taxes and were conspirators, cannot be upheld. There is no finding in the case that either of them purchased the mortgage *with the intent of paying the taxes and assessments, so as to relieve the life estate and cast the burden upon the remainder-men. They were paid evidently in self-defense, and for the purpose of saving their liens as mortgagees. It cannot, therefore, be said that they were volunteers, or that they acted in bad faith as to others, or to any one who was under a legal necessity to make the payment,* even if it may be urged that, if the taxes had remained a lien, the life tenant would have been obliged to pay them to prevent a sale of the property by the state or a return thereof, as that furnishes no reason why the plaintiff had not a perfect and complete right to protect his security from sale for the taxes. There is no rule by which the holders of the mortgage were obliged to delay the payment so as to compel the remainder-men to take action in regard to the same and relieve the property. They should have been vigilant in looking after their rights, and if they had done their duty the taxes would not have accumulated. Having failed to perform a plain duty, if they desired to protect the property against the taxes, after they have permitted the mortgagee to pay the taxes, they are in no position to object that it operates as a hardship upon them."

I have italicised a portion of this opinion so as to prevent any misapprehension that there may not be cases where the court would interpose to prevent an injustice; but, as already stated, the judgment in this action, having been made "on the merits," disposes of any question of conspiracy or bad faith on the part of Miller in his redemption.

Neither can it be claimed that there was any merger of the mortgage in the title obtained by the plaintiff as purchaser at the tax sale. Merger is always a question of intention, and is not to be presumed in opposition to the intent of the parties. Here it is clear that there was no intention that there should be a merger, and the intention of the assignee must prevail; and, besides this, there was no legal title into which the mortgage could fall and be absorbed. The evident purpose of the defendant in obtaining an assignment of the mortgage was manifested by his immediate use of the rights obtained thereby to effect a redemption from the tax sale.

In addition to this, the defendant contends that the rights of the parties have become res adjudicata by virtue of a judgment recovered in an action brought by Miller as Mrs. Ward's assignee of the Elliott mortgage. In that action Charles S. Barker, Maude E. Barker, and some other persons who were alleged to have a subsequent lien on the premises were made defendants. The complaint demanded judgment against Charles S. Barker for any deficiency which might occur on the sale. The complaint alleged the execution of the mortgage and its assignment to Miller; the sale of the premises by the city for nonpayment of taxes; and that Miller, "in order to protect the lien of said mortgage hereinbefore described, and in order to redeem the said mortgaged premises from the said sale so made as aforesaid, paid to the city of Brooklyn the sum of five hundred and fifty-six ⁵⁵/₁₀₀ dollars." Charles S. Barker alone answered, denying, among

other things, that the amount paid by Miller for taxes was due to him, for the reason that he was the purchaser at the tax sale and received the certificate of sale from the registrar of arrears, as required by law, and became owner of said premises, and thereafter procured the assignment to him of the bond and mortgage in question, for the fraudulent purpose of redeeming the premises as mortgaged from the sale thereof, and received back that sum and the $2,400 paid by him as purchase price of said premises at the time of the tax sale, as trustee for Maude E. Barker, the owner of the equity of redemption, and was bound to apply so much of the purchase price so received by him, as would discharge and satisfy said mortgage, to its payment, whereby Charles became discharged of all liability upon his bond; that the redemption at tax sale was fraudulent, colorable, and void, and by said redemption Miller parted with no money and became entitled to no equities in the premises. The judgment became res adjudicata between the parties as to the matters thus set up in the answer. The plaintiffs allege in the complaint herein substantially the same facts as were alleged in the answer of Barker in the foreclosure suit. They were defenses which Barker might properly have set up in that action. No objection to that issue was made by the plaintiff Miller in that action, and he was ready to proceed to trial on the issues raised by the answer. When the case came on for trial the defendant Charles S. Barker withdrew his answer, and an inquest was taken at special term, a stipulation being made by the plaintiff and the defendant that no judgment for deficiency should be entered against him. The defendant Maude did not appear or answer in the action. The judgment decreed that there was due to the plaintiff and should be paid out of the sale of the premises:

| | |
|---|---:|
| The amount of the mortgage and interest | $1,531 25 |
| Amount paid on redemption | 556 95 |
| Interest thereon | 5 73 |
| Plaintiff's costs | 216 81 |
| | $2,310 74 |

It appears by the sheriff's report of sale that the premises were sold for $2,500, out of which he retained:

| | |
|---|---:|
| His own fees | $ 50 75 |
| Amount paid for taxes | 259 88 |
| Amount paid to the plaintiff | 1,971 55 |
| | $2,282 18 |

—Leaving a deficiency of $131.25 between that sum and the amount due the plaintiff, with interest.

The law is too well settled, to need citation of authority, that a judgment becomes res adjudicata, as to parties thereto, as to any matter which might have been interposed as a defense. The judgment declares that there was due from the defendants Barker the principal and interest of the mortgage and the amount paid by him to the city on the redemption, and to that extent it is a bar to the present action. It is not essential to this proposition that the suit in which the judgment was rendered was brought for a different purpose from the present action, nor that the judgment was taken by default. Henriques

v. Yale University, 28 App. Div. 354, 51 N. Y. Supp. 284, citing Brown v. Mayor, etc., 66 N. Y. 385; Gates v. Preston, 41 N. Y. 113.

It follows that the judgment should be affirmed.

BARTLETT, J., concurs in result.

CULLEN, J. While I concur in the result reached by the Presiding Justice, I differ from some of the views expressed in his opinion. There can be no doubt that the object of the defendant in acquiring the mortgage on the plaintiffs' premises, and his redemption as mortgagee, was solely to avoid his own purchase. In other words, the defendant found that he had paid too much for the property, and sought to get his money back in preference to acquiring the premises purchased by him. We have held in People v. Palmer, 10 App. Div. 395, 41 N. Y. Supp. 760, and Sutherland v. City of Brooklyn, 87 Hun, 82, 33 N. Y. Supp. 959, that the owner of lands sold for taxes may elect to stand on the sale, and that this right cannot be defeated by the redemption of a stranger to the title. The price realized on the tax sale was sufficient to pay the mortgage on the premises in full, and leave a substantial surplus for the owner. The redemption by the defendant was therefore necessarily made, not for his own protection as mortgagee, but in his interest as tax-buyer. While a mortgagee may pay assessments on the mortgaged premises or redeem from sales thereon, and in such case add the amount paid by him for these purposes to his mortgage debt, this is permitted only in case the payments are made for his own protection. Where his act is in hostility to the interest of the owner of the equity of redemption, as where the mortgagee acquires the hostile title of a purchaser at a tax sale, he is not entitled to add the sum paid therefor to his mortgage lien. Williams v. Townsend, 31 N. Y. 411. Therefore I think that, had the plaintiffs resisted it, the defendant should not have been allowed in the foreclosure suit the amount paid by him on redemption. The difficulty, however, is that the plaintiffs allowed the foreclosure suit to go by default, and there suffered the recovery of a judgment, which necessarily established the validity of the redemption. That judgment I think conclusive in this suit.

HATCH and WOODWARD, JJ., concur.